**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| TRUSTEES ON BEHALF OF TEAMSTERS BENEFIT TRUST,<br><br>       Plaintiff,<br>   v.<br><br>DAVID AND TINA ARMAGOST,<br><br>       Defendants.<br>_____/ | No. C 12-2587 MEJ<br><br>**ORDER FOR CLERK OF COURT TO REASSIGN CASE**<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** (Dkt. No. 25) |

**I.  INTRODUCTION**

Plaintiff Trustees on Behalf of Teamsters Benefit Trust brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, alleging that Defendants David and Tina Armagost defrauded the Trust when they misrepresented their marital status, thereby allowing Tina Armagost to receive medical benefits to which she was not entitled. Compl. ¶¶ 1, 5, Dkt. No. 1.  Pending before the Court is Plaintiff's Motion for Default Judgment. Dkt. No. 25.  In its Motion, Plaintiff requests that the Court enter an order granting default judgment either for equitable restitution in the amount of $111,754.54, or for damages in the same amount, and attorneys' fees and costs.  Mot. at 9.  Defendants have failed to respond to Plaintiff's Motion and have not otherwise appeared in this matter.  Pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and hereby VACATES the May 16, 2013 hearing.

As Defendants have not consented to the undersigned's jurisdiction, the Court ORDERS the Clerk of Court to reassign this case to a District Judge. After careful review of Plaintiff's Motion and controlling legal authorities, the undersigned RECOMMENDS that default judgment be GRANTED as set forth below.

## II.  BACKGROUND

Plaintiff is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002 and § 1132(d).  Compl. ¶ 3.  During the relevant times described in the Complaint, David Armagost was a member of Teamsters Local 70 and an employee of Kirk Xpedx.  *Id.* ¶ 4.  By virtue of his employment and the relevant collective bargaining agreement, David was a member and participant of Teamsters Benefit Trust for the purpose of receiving health benefits.  Specifically, he received benefits under the Trust Fund's Plan V.  *Id.*

Defendant Tina Armagost also received health benefits from the Trust Fund by virtue of being married to David.  *Id.* ¶ 5.  According to the Summary Plan Description for Plan V, spouses are entitled to receive health benefits under the plan, but participants must inform the Trust Fund within 30 days when there is a change in family status that affects dependent eligibility, including when a member gets divorced.  *Id.* ¶¶ 6, 7; Ex. B, at 4.

Unbeknownst to Plaintiff, Defendants divorced on August 16, 2002, and therefore Tina's dependent coverage ended on August 31, 2002, by the terms of the Summary Plan Description.  *Id.* ¶ 9.  However, David did not inform Plaintiff of his divorce until July 24, 2009.  *Id.* ¶ 10.  During the time period between September 1, 2002 and July 24, 2009, Tina continued submitting claims for payment for medical benefits and prescriptions from Plaintiff.  *Id.* ¶ 11.  Also during this time, David signed Trust Fund claim forms authorizing payment of benefits for Tina as his spouse.  *Id.* ¶ 11; Johnson Decl., Exs. B, C, Dkt. No. 28.  Between September 1, 2002 and July 24, 2009, Plaintiff paid $107,420.82 toward medical bills and $4,324.72 toward prescription claims for Tina.  Compl. ¶ 12; Johnson Decl. ¶ 8.

Plaintiff, in a letter from Nora Johnson, informed David and Tina that because they divorced in August 2002, Tina had obtained the benefit improperly and that Plaintiff had the right to repayment. Johnson Decl. ¶ 11; Ex. D. David responded to the letter and did not dispute that he was divorced in 2002, but instead asserted that he attempted to inform Plaintiff of his divorce in 2002, 2004 and 2005. *Id.* ¶ 12. Plaintiff searched its records and there was no correspondence from David informing it of his divorce, and David signed documents in 2006 and 2007 attesting that Tina Armagost was eligible for benefits. *Id.* ¶¶ 9, 10; Exs. B, C. To date, neither David nor Tina have made any payments to the Trust Fund. *Id.* ¶ 13.

Plaintiff filed the instant Complaint on May 18, 2012, seeking equitable restitution and surcharge pursuant to ERISA, 29 U.S.C. § 1132(a)(3), and asserting state law claims for fraudulent deceit and negligent misrepresentation. Dkt. No. 1. Plaintiff attempted to personally serve Defendants at several addresses that came up through investigation in Hayward, Pleasanton, and Fremont, but to no avail. McEntee Decl. ¶ 4, Dkt. No. 27. Plaintiff ultimately filed an ex parte motion asking the Court to authorize service by publication, which the Court granted. Dkt. Nos. 13, 14. Plaintiff ran an advertisement publicizing the Complaint in the Hayward Daily Review, the Tri-Valley Herald, and the Oakland Tribune once a week for a month, on October 9, October 16, October 23, and October 30, 2012. Dkt. Nos. 15, 16. To date, Defendants have not appeared. The Clerk of Court entered default against Defendants on December 14, 2012. Dkt. No. 18.

On April 15, 2013, Plaintiff filed the present Motion for Default Judgment. Dkt. No. 25. The undersigned now issues the following recommendation.

### III.   DISCUSSION

**A.    Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or

otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

### 1. Subject Matter Jurisdiction

Plaintiff's first two causes of action allege claims under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) provides that "a participant, beneficiary, or fiduciary" may bring an ERISA enforcement action in federal court: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). Therefore, the Court has subject matter jurisdiction because a federal question exists. 28 U.S.C. § 1331(a). The Court also has supplemental jurisdiction over the state law claims because these claims are so related to the federal claim that they form part of the same case or controversy. 28 U.S.C. § 1367(a). The state law claims are based on the same facts and misconduct as the federal claims.

### 2. Personal Jurisdiction

Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.*, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002); *see also Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004) (holding that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the subject ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

4

In this case, Plaintiff has alleged sufficient facts to conclude that the Court has personal jurisdiction over all parties. The Plan is administered in the Northern District of California. Compl., Ex. A. Further, Defendants' last known addresses were in Alameda County, which is within this District. *Id.* ¶ 11. Defendants were both served by publication in Northern California. Dkt. No. 16. For these reasons, the undersigned finds that personal jurisdiction is proper pursuant to 29 U.S.C. § 1132(e)(2).

        3.      <u>Service of Process</u>

Rule 4(e) governs service upon individuals within the United States, and it provides that a plaintiff can effect service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Under California law, service by publication is governed by California Code of Civil Procedure section 415.50 ("Section 415.50"), which provides, in pertinent part, that: "A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that . . . (1) [a] cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action." Cal. Code Civ. P. § 415.50(a)(1). If the court finds that a plaintiff has satisfied these requirements, "[t]he court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served," and in accordance with California Government Code section 6064. *Id.* § 415.50(b).

Here, Plaintiff made diligent efforts to effectuate service by personal delivery but to no avail. *See* McEntee Decl, Dkt. No. 10. Beginning on May 23, 2012, service of process was attempted at what Plaintiff believed to be Defendants' current address, but the process server, Wheels of Justice, was advised on June 2, 2012 by neighbors that Defendants had moved several months prior to that date. *Id.* ¶ 4; Ex. 1. Plaintiff also attempted service at David Armagost's parents' home, but the process server was advised that he did not live there. *Id.* ¶¶ 5-7. Plaintiff also retained the service of

an investigator, but the investigator advised Plaintiff that the only address he found for Defendants was the same address where service had previously been attempted. *Id.* ¶ 9.

Unable to locate Defendants for service by personal delivery, Plaintiff applied to the Court to serve by publication, which the Court granted, ordering service by publication in the Oakland Tribune, Hayward Daily Review, and Tri-Valley Herald. Dkt. No. 14. Plaintiff served Defendants by publication in the three newspapers on October 9, 16, 23, and 30, 2012. Dkt. No. 16. Based on this history, the undersigned finds that Defendants have been served in accordance with Rule 4(e)(1) and Section 415.50. *See Watts v. Crawford*, 10 Cal.4th 743, 749 n. 5 (1995).

**B.  Legal Standard**

After entry of a default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**C.  *Eitel* Analysis**

1.  <u>Prejudice to the Plaintiff</u>

Under the first *Eitel* factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment. *Eitel*, 782 F.2d at 1471-72. Here, Plaintiff

seeks to recoup $111,745.54 that was wrongfully paid toward medical benefits and prescriptions for Tina Armagost due to the fraudulent misrepresentation of Defendants. If the Court were to deny their request, Plaintiff would have no other avenue for recovery, and further delay in securing a judgment would only increase the changes that Plaintiff will be unable to recover the amounts owed. *See, e.g.*, *Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. C&L Coatings, Inc.*, 2012 WL 7748318, at *4 (N.D. Cal. Dec. 18, 2012). Thus, absent a default judgment, there is a likelihood of prejudice to Plaintiff. Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiff's Motion would leave it without a remedy. Accordingly, the first *Eitel* factor weighs in favor of granting default judgment.

        2.      <u>Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint</u>

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. The Court must examine whether Plaintiff has asserted claims upon which it may recover. *Bd. of Trs. of Laborers*, 2012 WL 7748318, at *4. Here, Plaintiff alleges four causes of action. However, as to Plaintiff's state law causes of action, Plaintiff seeks relief only in the alternative should the Court find that it is not entitled to relief under ERISA. Mot. at 6. As discussed below, Plaintiff's Complaint sufficiently alleges ERISA claims upon which recovery can be based. Therefore, the undersigned need only address Plaintiff's first two causes of action.

          *a.*      *Equitable Restitution Pursuant to ERISA*, 29 U.S.C. § 1132(a)(3)

The first cause of action is for equitable restitution under § 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Compl. ¶¶ 13-16. "The Ninth Circuit has recognized the remedy of restitution under ERISA § 502(a)(3) in situations involving ill-gotten gains, such as money obtained through fraud or wrongdoing." *Nw. Adm'rs., Inc. v. Cutter*, 2008 WL 217731, at *5 (W.D. Wash. Jan 24, 2008) (internal quotations omitted). For example, the Ninth Circuit noted in *Carpenters Health and Welfare Trust For S. Cal. v. Vonderharr* that, "[t]he remedies of restitution and the imposition of a

constructive trust are available under § 1132(a)(3), but only as true equitable remedies and provided the traditional requirements of fraud or wrong-doing are satisfied." 384 F.3d 667, 672 (2004).

Here, Plaintiff's Summary Plan Description clearly sets forth the dependent eligibility requirements, provides that a spouse is no longer eligible for benefits when divorced, and requires that participants inform the Trust Fund of such divorce within thirty days. Compl. ¶¶ 6-8, Ex. A. The Armagosts were divorced in August 2002, at which point Tina Armagost was no longer eligible for benefits, yet she continued to receive them (and David Armagost attested that she was eligible to receive such benefits) until 2009. *Id.* ¶¶ 9-11. The Summary Plan Description and the Trust Agreement also both provide that the Trust Fund may bring suit to collect any overpayment. *Id.*, Exs. A, B. This claim is nearly identical to that in *Nw. Adm'rs v. Cutter*, 328 Fed. Appx. 577 (9th Cir. 2009) (unpublished). In *Cutter*, the Ninth Circuit held that the plaintiff trust fund was entitled to relief under 29 U.S.C. §1132(a)(3) where the defendant participant misrepresented that a third party was his wife and, as a result, she received over $70,000 in medical payments from the trust fund. *Id.* at 577. The Court found that the plaintiff in that case was entitled to recover the entire amount as restitution. *Id.* The court held that in cases where the defendant has committed fraud or wrongdoing, and "actively and deliberately" mislead the plaintiff to the plaintiff's detriment, that restitution is available as equitable relief pursuant to 29 U.S.C. §1132(a)(3). *Id.* at 578; *see also Trs. of the Nw. Laborers-Emp'rs Health and Sec. Trust v. Malone*, 2010 WL 4923123 (W.D. Wash., Nov. 29, 2010) (court awarded restitution as equitable relief where the defendant fraudulently reported an employee as eligible based on hours the employee had not worked). Similarly, in the instant case, because Defendants failed to inform Plaintiff of their divorce, fraudulently misrepresented that Tina Armagost was eligible for benefits, and because Plaintiff relied on that representation to pay benefits for Tina Armagost, Plaintiff is entitled to recover equitable restitution.

    b.  *Surcharge Pursuant to ERISA, 29 U.S.C. §1132(a)(3)*

The second cause of action is Plaintiff's claim for surcharge under 29 U.S.C. § 1132(a)(3). In *Cigna Corp. v. Amara*, ___ US ___, 131 S. Ct. 1866, 1880 (2011), the United States Supreme Court

8

held that plaintiffs may receive the equitable remedy of surcharge under 29 U.S.C. § 1132(a)(3) "for a loss resulting from a trustee's breach of duty or to prevent the trustee's unjust enrichment." The Court further held that the surcharge remedy "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.*

Here, Plaintiff appears to argue that David Armagost is a fiduciary under ERISA as a participant in the Fund. Mot. at 6. Specifically, Plaintiff argues that David Armagost owed a duty to the Trust Fund and other participants of the Fund not to breach the Trust Agreement or plan rules. *Id.* As set forth in the Complaint, David breached that duty by falsely representing that Tina Armagost remained his spouse and eligible for benefits. Compl. ¶ 11. Plaintiff further argues that the Summary Plan Description assigned David the duty to inform the Trust Fund of any change to family status that would impact dependent eligibility within 30 days of the change, and he did not do that, allowing Tina Armagost to fraudulently obtain benefits for several years after their divorce. *Id.* ¶¶ 7, 11. Therefore, due to David Armagost's breach, Plaintiff argues that is entitled to the equitable remedy of surcharge against David Armagost in the amount of benefits it paid out for medical treatment of Tina Armagost.

ERISA defines a fiduciary as anyone that (i) exercises discretionary authority or control managing an ERISA plan, (ii) renders investment advice with respect to an ERISA plan in exchange for compensation, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A). Plaintiff has failed to establish that David Armagost qualifies as a fiduciary under any of these definitions. Accordingly, the undersigned recommends that the Court deny Plaintiff's claim for surcharge.

   *c. Summary*

Based on this analysis, the undersigned finds that Plaintiff has established its claim for equitable restitution pursuant to ERISA, 29 U.S.C. § 1132(a)(3). Because Defendants failed to inform Plaintiff of their divorce, fraudulently misrepresented that Tina Armagost was eligible for benefits, and because Plaintiff relied on that representation to pay benefits for Tina Armagost,

9

Plaintiff is entitled to recover equitable restitution in the full amount it paid to Tina Armagost. However, Plaintiff has failed to establish its claim for surcharge. Accordingly, the second and third *Eitel* factors weigh in Plaintiff's favor.

### 3. Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendants' conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

Here, the sum requested, $111,745.54, is the exact amount that Plaintiff overpaid due to Defendants' fraudulent acts in violation of the Trust Agreement and the Summary Plan Description. Compl ¶ 11; Johnson Decl. ¶ 8. Furthermore, the Trust Agreement authorizes Plaintiff to collect the entire amount of overpayment. Johnson Decl. ¶ 11; Ex. D. Therefore, the requested amount is supported by the evidence and not unreasonable. Thus, this factor weighs in favor of default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Here, Defendants were given ample opportunity to respond to the Complaint and participate in the proceedings, yet they failed to answer the Complaint, leaving the Court with no information regarding any disputed issue of material fact. Further, Plaintiff has set forth adequate allegations detailing Defendants' fraud. It is unlikely that, even if Defendants appeared in this matter, they would be able to dispute these facts.

10

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060-61 (N.D. Cal. 2010). Therefore, this factor weighs in favor of entry of default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs' Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72. Plaintiff properly served Defendants with the Summons and Complaint pursuant to Section 415.50. Dkt. Nos. 14, 16. However, Defendants made no appearance in this matter and have not responded to Plaintiff's Motion. Consequently, there is nothing suggesting that Defendants' failure to appear and litigate this matter is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). As such, this factor weighs in favor of granting default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id*. However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Similarly, other courts have stated that default judgment is appropriate when a defendant refuses to litigate a case. *See, e.g., Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, given that Defendants have not participated in the proceedings, a decision on the merits would not otherwise be possible. In situations such as this, Rule 55(b) allows the Court to grant default judgment. Therefore, this factor weighs in Plaintiff's favor.

### 7. Summary of *Eitel* Factors

Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned recommends that the Court grant Plaintiff's Motion and enter default judgment against Defendants.

11

**D.     Relief Sought**

   1.     <u>Restitution</u>

Plaintiff seek damages of $111,754.54 from Defendants for the amount that Plaintiff paid toward Tina Armagost's medical and prescription benefits after she was no longer eligible. Plaintiff seeks these damages as equitable relief pursuant to 29 U.S.C. § 1132(a)(3). Plaintiff has the burden of proving its damages through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). As discussed above, restitution may be assessed as equitable relief under § 1132(a)(3). In such a case, courts award the amount of overpayment as restitution. *Cutter*, 328 Fed. Appx. at 578; *Malone*, 2010 WL 4923123, at *3. Plaintiff has set forth through written affidavit from an assistant fund manager that Plaintiff overpaid $111,754.54 in benefits for Tina Armagost after she was no longer eligible. Johnson Decl. ¶¶ 7-8, 11. Specifically, between August 2002 and July 24, 2009, Plaintiff paid $107,420.82 in medical claims and $4,324.72 in prescription claims for Tina. *Id.* ¶ 8.

   2.     <u>Attorneys' Fees and Costs</u>

Finally, Plaintiff seeks $4,775.00 in attorneys' fees and $2,241.49 in costs. Mot. at 8-9. Under 29 U.S.C. § 1132(g)(1), the Court may, in its discretion, allow a reasonable attorneys' fee and costs of action to a participant, beneficiary, or fiduciary. In this case, the Trust Agreement, at Article VI, Section 6.1(d), provides that Plaintiff may collect attorneys' fees and costs accrued in collecting an overpayment from participants. Compl., Ex. A at 17. Accordingly, the undersigned finds an award of attorneys' fees and costs appropriate. *Kemner v. Dist. Council of Painting & Allied Trades No. 36,* 768 F.2d 1115, 1120 (9th Cir. 1985) (holding defendant liable for reasonable attorneys' fees and costs incurred by trust funds in seeking to collect the delinquencies at issue).

      *a.     Attorneys' Fees*

The Ninth Circuit has articulated five factors that courts should apply in the exercise of their discretion under § 1132(g): (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the

12

opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980) (citations omitted); *Cal. Serv. Emps. Health & Welfare Tr. Fund v. Advance Bldg. Maint.*, 2008 WL 4447723, at *2 (N.D. Cal. Oct. 8, 2008). These factors are intended to guide the court in its discretion, but none of the factors are dispositive; any combination can support an award of fees. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.,* 25 F.3d 743, 749 (9th Cir. 1994); *Legassie Raytheon Co. v. Emp. Benefits Admin Comm.*, 2011 WL 1296395, at *6 (N.D. Cal. Apr. 4, 2011).

Here, Plaintiff's claims regarding Defendants' failure to inform Plaintiff of their divorce and fraudulent misrepresentation that Tina Armagost was eligible for benefits have been adequately supported and the merits of their position are well-grounded. There is nothing in the record justifying or excusing Defendants' fraudulent misrepresentation. Moreover, the award of attorneys' fees would deter other employees from making similar misrepresentations because fees can add greatly to the amount of any damages award. Accordingly, the undersigned finds that the above factors weigh in favor of awarding attorneys' fees to Plaintiff.

Once fees under ERISA are awarded, the Court must calculate the lodestar amount to assess the reasonableness of attorneys' fees. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. The lodestar amount is determined by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotations omitted). In awarding attorneys' fees, courts must look to the prevailing market rates in the relevant community. *Bell v. Clackamas Cnty.,* 341 F.3d 858, 860 (9th Cir. 2003). In this case, Plaintiff's counsel seeks an award for 19.1 hours of attorney time in connection with this suit.[1] McEntee Decl. ¶ 17; Ex. H. According to the Declaration of Mr.

---

[1] In his Declaration, Mr. McEntee attests that the firm expended 19.1 hours in attorney time as of the filing date of the default judgment motion, plus an anticipated 3 hours for estimated attorney time for preparation and attendance at the default judgment hearing. However, the Court

McEntee, the fee arrangement between Plaintiff and its counsel, Beeson, Tayer, & Bodine, APC, is $250.00 per hour for all attorney time. *Id.* ¶ 17.  Plaintiff's request is for its counsel Catherine Arostegui, who has over twenty-five years experience in ERISA collection cases, and Peter McEntee, who is in his fifth year of practicing law at the firm. Pl.'s Prop. Findings of Fact & Concl. of Law at 14, Dkt. No. 31.

### *i.     Reasonableness of Hourly Billing Rate*

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750.  In doing so, the Court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).  Generally, the relevant community is the forum where the district court sits. *Id.*  This District recently approved fees at this rate for both Ms. Arostegui and Mr. McEntee. *See Trs. on Behalf of Teamsters Benefit Trust v. Coastside Scavenger Co.*, 2012 WL 2906488, at *8 (N.D. Cal. July 16, 2012).  Plaintiff has also cited to orders from this District that have approved this rate for Ms. Arostegui. *See* Arostegui Decl., Exs. A-E.  Further, the $250.00 rate is less than the rate found reasonable in ERISA actions by other judges in the Northern District. *See, e.g., Bd. of Trs. Of the Laborers Health and Welfare Trust Fund v. Perez,* 2011 WL 6151506, at *14 (N.D. Cal. Nov. 7, 2011) (finding hourly rates of $325 and $345 reasonable in ERISA case).  After reviewing Plaintiff's billing records and considering the experience of counsel, the undersigned finds that the hourly rates are reasonable and consistent with prevailing market rates in the Northern District.

### *ii.     Reasonableness of Hours Billed*

In order to assess whether the number of hours billed is reasonable, Plaintiff must submit

---

vacated the hearing and Plaintiff has submitted no documentation for attorney time after the default judgment motion was filed.  Further, in its Proposed Findings submitted to the Court, Plaintiff seeks an award for 19.1 hours of attorney time, with no mention of the additional 3 hours. Accordingly, the undersigned's calculations do not include any time over the 19.1 hours.

14

detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The Court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

In this case, Plaintiff's counsel billed a total of 19.1 hours. McEntee Decl. ¶ 17; Ex. H. After reviewing the detailed billing records provided in Mr. McEntee's Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are reasonable. The undersigned thus recommends that Plaintiff be awarded attorneys' fees in the amount of $4,775.00, which represents the total itemized fee in Mr. McEntee's Declaration.

      *b.   Costs*

Plaintiff requests $2,241.49 in costs. Mot. at 9. A breakdown of these costs is as follows:

    $350.00 for filing costs;
    $300.00 for process serving costs;
    $1,135.00 for service of summons and complaint via publication
    $6.02 for photocopy, first class postage, and PACE retrieval costs;
    $34.21 for UPS overnight costs to the Court; and
    $416.26 for Westlaw online legal research.

McEntee Decl., Ex. I. The Ninth Circuit permits the recovery of out-of-pocket expenses normally charged to a fee-paying client. *Pension Trust Fund for Operating Eng'rs v. Joco Geospatial Cos., Inc.*, 2011 WL 6303404, at *6 (N.D. Cal. Dec. 16, 2011) (citing *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redlands Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006)). In *Bonilla v. E.G. Const.*, 2007 WL 2317589 (N.D. Cal. Aug.10, 2007), an ERISA action involving a motion for default judgment, the court awarded plaintiffs costs for filing, service of process, photocopy fees, and postage. *Id.* at *9. Therefore, Plaintiff's costs of $350.00 in filing fees, $300.00 for service, and $1,135 for service via publication are allowable. Additionally, because postage, delivery expenses, and photocopying are routinely billed, it is recommended that the request for $34.21 for delivery expenses and $6.02 for photocopying be awarded.

15

However, courts consider legal research fees, such as Westlaw fees, to be overhead and not properly considered costs that may be awarded. *See United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"); *Cairns v. Franklin Mint Co.*, 115 F.Supp.2d 1185, 1189 (C.D. Cal. 2000). Thus, the undersigned recommends that the Court deny Plaintiff's request for $416.26 in online legal research costs.

Accordingly, the undersigned recommends that the Court award $1,825.23 in costs.

### IV.  CONCLUSION

Based on the above analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Default Judgment as to its first claim for equitable restitution pursuant to ERISA, 29 U.S.C. § 1132(a)(3), and enter default judgment against Defendants David and Tina Armagost. Plaintiff should be awarded $111,754.54 in damages, $4,775.00 in attorneys' fees (comprised of 19.1 hours of attorney time at $250 per hour), and $2,241.49 in costs.

Any party may file objections to this Report and Recommendation with the District Judge within fourteen days after being served with a copy. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

**IT IS SO RECOMMENDED.**

Dated: May 9, 2013

_____
Maria-Elena James
United States Magistrate Judge

16